### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ABDUL WARIS AKINSANYA,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )    **No. CIV-26-448-J** |
| | ) |
| **TODD BLANCHE, et al.,** | ) |
| | ) |
| **Respondents.** | ) |

### REPORT AND RECOMMENDATION

Petitioner Abdul Waris Akinsanya, a noncitizen[1] seeks a writ of habeas corpus under 28 U.S.C. § 2241, arguing his removal from the United States is not reasonably foreseeable. *See generally* Doc. 10.[2] United States District Judge Bernard M. Jones, II referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 4.[3] Respondents filed a response, Doc. 11, and Petitioner replied, Doc. 13.[4] For

---

[1]    This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2]    The amended petition, Doc. 10, supersedes the original petition, Doc. 1, as the operative petition.

[3]    Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

[4]    Respondent Warden Scarlet Grant is not a federal official, and the response is not filed on her behalf. *See* Doc. 11, at 2.

the reasons below, the undersigned recommends the Court grant habeas corpus relief in part.

## I.     Factual background.

Petitioner is a citizen of Nigeria who entered the United States on January 4, 2018, on a F1 student visa. Doc. 11, at 2 (citing Ex. 1, at 1). On July 15, 2024,[5] the Department of Homeland Security (DHS) issued a Final Administrative Removal Order (FARO) against Petitioner under the Immigration and Nationality Act (INA) because Petitioner was convicted of an aggravated felony. Doc. 11, Ex. 3, at 1-2; *see United States v. Akinsanya*, No. CR-23-202-HE, Doc. 44 (Mar. 6, 2024) (Judgment imposing eighteen months' imprisonment in custody of the United States Bureau of Prisons (BOP)).

On July 7, 2025, Oklahoma City Enforcement Removal Operations (ERO) encountered Petitioner at the Oklahoma County Detention Center, where he was "being detained for an active forgery warrant." Doc. 11, Ex. 1, at 2. On July 14, 2025, Immigration and Customs Enforcement (ICE) took Petitioner into custody under the removal order. *Id.*

On November 10, 2025, an Immigration Judge (IJ) concluded Petitioner had "established a reasonable possibility that [he] would be persecuted on the

---

[5]     Deportation Officer Romeo Foncha's declaration states the FARO was issued on August 8, 2026, *see* Doc. 11, Ex. 1, at 2, but the FARO is dated July 15, 2024 and was served on Petitioner on August 9, 2024. Doc. 11, Ex. 3, at 2-3.

basis of a protected ground, or . . . that [he] would be tortured in the country of removal." Doc. 11, Ex. 5, at 1. On December 8, 2025, Petitioner applied for asylum and withholding of removal. Doc. 11, Ex. 4, at 4-15. Petitioner's withholding-of-removal proceedings are ongoing in the immigration court. *See* Doc. 11, at 3.

## II.    Petitioner's claims.

In Ground One, Petitioner seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that (1) he is detained under 8 U.S.C. § 1231(a)(1); (2) that he has shown there is no significant likelihood of his removal in the reasonably foreseeable future, and that he must be released on an Order of Supervision (OOS) under 8 C.F.R. § 241.13; (3) or in the alternative, "that he otherwise satisfies the conditions for release" under an OOS found at 8 C.F.R. § 241.4(e). Doc. 10, at 17. In Ground Two, Petitioner alleges Respondents violated the INA (8 U.S.C. § 1231) and its implementing regulations (8 C.F.R. §§ 241.4, 241.13). *Id.* at 17-18. In Ground Three, he alleges a violation of his Fifth Amendment Due Process rights. *Id.* at 18.

Petitioner seeks expedited consideration and an order restraining Respondents from moving him from this District and requiring 72-hour notice if any move is intended;[6] "an emergency preliminary order requiring

---

[6]    This Court's Order for a Response mooted these requests. *See* Doc. 6.

Respondents to give [him] due process prior to removing him to an allegedly safe third country in the form of a full merits hearing for asylum, withholding of removal, and DCAT before an [IJ] relating to the proposed country of removal with a right to an administrative appeal to the Board of Immigration Appeals"; order his immediate release on an OOS under either 8 C.F.R. §§ 241.13 or 241.4; declare that Respondents failed to adhere to its binding regulations and precedent; declare that his detention violates the Fifth Amendment's Due Process Clause and the INA; and permanently enjoin "Respondents from deporting [him] to an allegedly safe third country" without a full merits hearing and the right to an appeal. *Id.* at 19-20.

## III.    Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

## IV.    Analysis.

### A.    Statutory and regulatory framework.

Petitioner contends his prolonged detention after the IJ's final order for his removal violates his Fifth Amendment due process rights. Doc. 10, at 18.

4

Under 8 U.S.C. § 1231(a)(1)(a) "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (. . . the 'removal period')." "During the removal period, the Attorney General shall detain the alien." *Id*. § 1231(a)(2). The removal period begins on the latest of the following dates:

> (i) The date the order of removal becomes administratively final.

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id*. § 1231(a)(1)(B). Petitioner's 90-day removal period began when he was released from BOP confinement on July 7, 2025, and ended on October 5, 2025. https://www.bop.gov/inmateloc/ (last visited May 11, 2026); *see Johnson v. Guzman Chavez,* 594 U.S. 523, 528 (2021) ("The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) **the date on which the [noncitizen] is released from non-immigration detention or confinement**.") (emphasis added) (quoting § 1231(a)(1)(B)).[7]

---

[7]     Petitioner states that his expedited removal order became administratively final on July 15, 2025. Doc. 10, at 2. Respondents do not provide the Court with a date for when the order became final. The FARO was

The removal period may be extended "and the [noncitizen] may remain in detention during such extended period if the [noncitizen] fails or refuses to make timely application in good faith for travel or other documents . . . or conspires or acts to prevent the [noncitizen's] removal." 8 U.S.C. § 1231(a)(1)(C). And a noncitizen "ordered removed who is . . . removable under section 1227(a)(1)(c), 1227(a)(2), or 1227(a)(4) of this title . . . may be detained beyond the removal period." § 1231(a)(6).

### 1.    8 C.F.R. § 241 and the Post 90-Day Removal Period.

Generally, when an alien is ordered removed, the removal is to occur within the ninety-day "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). If ICE wishes to continue detaining a noncitizen held under § 1231(a) beyond the 90-

---

issued on July 15, 2024, pursuant to 8 U.S.C. § 1228(b). *See* Doc. 11, Ex. 3, at 3. Section 1228(b)(3)(A)(iii) provides that "[u]pon execution by the defendant of a valid waiver of the right to appeal the conviction on which the order of removal is based, the expiration of the period described in section 1252(b)(1) of this title, or the final dismissal of an appeal from such conviction, the order of removal shall become final and shall be executed at the end of the prison term in accordance with the terms of the order." 8 U.S.C. § 1228(b)(3)(A)(iii). Section 1252(b)(1) provides that "with respect to review of an order of removal . . . [t]he petition for review must be filed not later than 30 days after the date of the final order of removal." So, the deadline for the parties to appeal expired on August 15, 2024, and Petitioner's removal order became final then. However, Petitioner was not released from BOP custody until July 7, 2025, the latest of the dates provided in § 1231(a)(1)(B), so that is the date from which the removal period runs. *See Rosales v. Bureau of Immigr. & Customs Enf't,* 426 F.3d 733, 738 (5th Cir. 2005) (noting that "by statute, [the petitioner's] removal period does not start until his state term of incarceration ends.") (citing 8 U.S.C. § 1231(a)(1)(B)(iii)).

6

day removal period, then ICE will conduct a "custody review." 8 C.F.R §

241.4(c)(2) ("For any alien the district director refers for further review after

the removal period, or any alien who has not been released or removed by the

expiration of the three-month period after the review, all further custody

determinations will be made by the Executive Associate Commissioner, acting

through the [Headquarters Post-order Detention Unit (HQPDU)].").[8] As part

of this review, ICE must follow certain agency procedures codified at 8 C.F.R.

§ 241.4. *Id.* These procedures are intended to provide the noncitizen with

fundamental due process protections that courts have found to be

constitutionally required, such as the right to notice and an opportunity to be

heard. *See D'Alessandro v. Mukasey,* 628 F. Supp. 2d 368, 388-403 (W.D.N.Y.

2009)). When ICE fails to follow these procedures, a court may conduct the

---

[8]    To be released under terms of supervision, "a majority of the Review Panel members, or the Director of the HQPDU" must determine (1) that the noncitizen's immediate removal, while proper, is neither practicable nor in the public interest; (2) "[t]he [noncitizen] is presently a non-violent person" and "likely to remain nonviolent if released"; (3) the noncitizen is "not likely to pose a threat to the community following release"; (4) the noncitizen "is not likely to violate the conditions of release"; and (5) the noncitizen "does not pose a significant flight risk if released." 8 C.F.R. § 241.4(e)(1)-(6). ICE must also consider whether the noncitizen is "a significant flight risk or may abscond to avoid removal," "favorable factors, including ties to the United States such as the number of close relatives residing here lawfully," and factors bearing on the noncitizen's dangerousness, such as criminal history, disciplinary infractions, and past immigration violations, among others. *Id.* § 241.4(f)(1)-(8). Finally, ICE must issue a written decision, briefly explaining its reasoning behind continuing detention or ordering supervised release. *Id.* § 241.4(d)).

custody review itself and order the noncitizen released. *Jimenez v. Cronen,* 317 F. Supp. 3d 626, 642 (D. Mass. 2018).

The procedures under 8 C.F.R. § 241.4 are as follows. First, ICE must conduct the initial custody review "prior to the expiration of the removal period" or "as soon as possible thereafter." 8 C.F.R. §§ 241.4(h)(1), (k)(1)(i), (k)(2)(iv).[9]

Second, ICE must "provide written notice to the detainee approximately 30 days in advance of the pending records review so that the [noncitizen] may submit information . . . in support of [their] release." *Id.* § 241.4(h)(2). Third, ICE must "forward by regular mail a copy of any notice or decision that is being served" on the noncitizen to the noncitizen's attorney, if they are represented. *Id.* § 241.4(d)(3).

### 2.    *Zadvydas* and the "presumptively reasonable" six-month period.

---

[9]    ICE may dispense with "a custody review under these procedures when [it] notifies the [noncitizen] that it is ready to execute an order of removal." 8 C.F.R. § 241.4(g)(4). When ICE chooses to do so, a review of other courts addressing the issues finds that ICE will issue a "Notice of Imminent of Removal" to the detained noncitizen. *See Martinez v. Jamison,* 2026 WL 700335, at *6 (E.D. Pa. Mar. 12, 2026) ("Indeed, on the very same day that Petitioner was arrested—February 4—Respondents also provided Petitioner with a 'Notice of Imminent Removal Pursuant to 8 C.F.R. § 241.4(g)(4),' which states that ICE 'will not conduct a custody review at this time' and 'is in possession of a travel document to affect your removal and expects this to occur in the near future.'") (record citation omitted). There is no indication from Respondents that such Notice was submitted in Petitioner's proceedings, so the undersigned finds this regulation is not at play here.

If ICE opts for continued detention, the agency is not authorized to hold the noncitizen indefinitely. *See Zadvydas v. Davis,* 533 U.S. 678, 697, 699 (2001). In *Zadvydas*, the Supreme Court made clear that detention under § 1231 is authorized only so long as it is "reasonably necessary to secure [the noncitizen's] removal." *Id.* at 699. Such detention is "presumptively reasonable" for up to six months. *Id.* at 701. Reasonableness is measured by looking to the statute's basic purpose, which is assuring the noncitizen's presence at the moment of removal. *Id.* at 699.

After that, the detainee may bring a habeas action to challenge his detention. *Id.* at 684-85, 688. To obtain habeas relief, the petitioner has the initial burden to show "there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Presuming the petitioner does so, the burden shifts, requiring "the Government [to] respond with evidence sufficient to rebut that showing." *Id.*[10]

"'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam) (quoting *Reno v. Flores*, 507 U.S. 292, 306

---

[10]    *Zadvydas'* holding has since been expanded to apply to noncitizens who are deemed inadmissible. *Clark v. Martinez*, 543 U.S. 371, 378-379 (2005); *see also Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1123-24 (10th Cir. 2005) (noting that *Clark* expanded the holding of *Zadvydas* to apply to inadmissible noncitizens and granting an inadmissible noncitizen's habeas petition).

(1993)). The Due Process Clause is also implicated where "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency." *United States v. Caceres*, 440 U.S. 741, 752-53 (1979).

"There is no express limitation on the length of an alien's post-removal-period detention under § 1231(a)(6)." *Khaliq v. Noem*, No. CIV-25-1154-SLP, 2026 WL 196631, at \*6 (W.D. Okla. Jan. 26, 2026). "But in *Zadvydas,* the Supreme Court interpreted § 1231(a)(6) narrowly and imposed 'an implicit 'reasonable time' limitation' on such detentions to avoid any Fifth Amendment due process issues that could arise from indefinite detention." *Id.* (quoting *Zadvydas,* 533 U.S. at 682). "After *Zadvydas*, an alien can be detained only 'until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Id.* (quoting *Zadvydas,* 533 U.S. at 701). "If the alien makes such a showing, 'the [g]overnment must respond with evidence sufficient to rebut the showing.'" *Id.*

"The six-month presumption 'does not mean that every alien not removed must be released after six months.'" *Id.* "Nevertheless, 'for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink.'" *Id.* "What constitutes a significant likelihood of removal and how to measure the reasonably foreseeable future . . . is incapable of any bright-line

10

delineation." *Id.* (internal quotation marks omitted). Thus, to determine whether a noncitizen's post-removal detention becomes unconstitutional, "[c]ourts have looked to whether the mere passage of time is sufficient, whether the petitioner's case fits within certain defined circumstances, or whether the petitioner is similarly situated to the two petitioners in *Zadvydas.*" *Id.* (footnote omitted).[11] "Within this judicial district, judges . . . have also looked to whether the petitioner has demonstrated 'institutional barriers to repatriation or obstacles particular to his removal.'" *Id.* (quoting *Dusabe v. Jones*, No. 24-464-SLP, 2024 WL 5465749, at *3 (W.D. Okla. Aug. 27, 2024), *adopted*, 2025 WL 486679 (W.D. Okla. Feb. 13, 2025)).

## B.    Petitioner has not met his burden under *Zadvydas.*

Petitioner filed his habeas petition on April 5, 2026. *See* Doc. 10. Petitioner's 90-day removal period ended on October 5, 2025. Thus, the six-month period of "presumptively reasonable" detention under *Zadvydas* has expired. 533 U.S. 678 at 701. Still, Petitioner must show that there is "good reason to believe that there is no significant likelihood of removal in the

---

[11]    The *Zadvydas* petitioners were effectively trapped in a "removable-but-unremovable limbo," *Jama v. ICE*, 543 U.S. 335, 703 (2005), as one originated from a country which the United States did not have a repatriation agreement with, and the other "was literally a man without a country" as "he was born in a refugee camp in Germany in 1948." *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002).

reasonably foreseeable future (NSLRRFF)." *Id.*[12]

Petitioner is a native and citizen of Nigeria. *See* Doc. 11, Ex. 1 at 1. Petitioner contends there is no significant likelihood of his removal in the reasonably foreseeable future. Doc. 10, at 2-3. He rests this claim in part on his pending asylum and withholding of removal application. *Id.* Should the IJ deny his application for withholding of removal, he intends to appeal to the BIA, and there is essentially no telling when this appellate process might end. *Id.* Respondents do not attempt to refute Petitioner's suggestion that he could be held for years in ICE custody because there is no certain end date to his detention. They simply argue the process is "'neither indefinite nor potentially permanent,'" Doc. 11, at 8 (quoting *Soberanes*, 388 F.3d at 1311).

Respondents submit the declaration of ICE Deportation Officer Romeo M. Foncha, Doc. 11, Ex. 1, but nothing in Officer Foncha's declaration shows any efforts to request travel documents or to coordinate travel for Petitioner. And Officer Foncha does not submit that ICE has completed Petitioner's 90-day custody review or conducted a second review after six months' detention. *See* 8 C.F.R. § 241.4(k)(2).

That said, a withholding-only proceeding is a proceeding where "the only

---

[12]    Respondents do not suggest that Petitioner is somehow at fault under 8 U.S.C. § 1231(a)(1)(C) and has not acted in good faith "to make timely application . . . for travel or other documents necessary" for his departure.

12

issue is whether the alien may be removed to his home country." *See Riley v. Bondi*, 606 U.S. 259, 265 (2025). Under 8 U.S.C. § 1231(b)(3)(A), a noncitizen may be granted a withholding of removal to a country if the noncitizen's "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." The "validity of removal orders is not affected by the grant of withholding-only relief" and a noncitizen's "initiation of withholding-only proceedings does not render non-final an otherwise 'administratively final' reinstated order of removal." *See Johnson,* 594 U.S. at 540.

Because "[a]n order of removal is administratively final regardless of whether a noncitizen has pending 'withholding only' proceedings," the Court finds that Petitioner's order of removal was final for purposes of § 1231 on August 15, 2024. Once the withholding of removal and asylum proceedings have concluded, Petitioner will be either removed or released. *See Soberanes*, 388 F.3d at 1311 (explaining that the detention of a noncitizen during an appeal is "directly associated with a judicial review process that has a definite . . . termination point," and is "neither indefinite nor potentially permanent"); *G.P. v. Garland*, 103 F.4th 898, 903 (1st Cir. 2024) ("'[W]ithholding-only proceedings are finite'" and "because they 'have a definite ending point, then so too must the detention <u>pending</u> the resolution of those proceedings.'" (quoting *Castaneda v. Perry*, 95 F.4th 750, 757 (4th Cir. 2024)); *M.P. v. Joyce*,

13

2023 WL 5521155, at *4 (W.D. La. Aug. 10, 2023) ("[D]etention is neither indefinite nor potentially permanent where the delay in removal is directly attributable to the litigation activity of the [noncitizen].") (internal quotation marks omitted). *Zadvydas* alone thus does not require Petitioner's immediate release.

### C.   As-applied due process claim.

While Petitioner may be unable to challenge his detention purely on *Zadvydas* grounds, he may bring an as-applied constitutional challenge to his detention. Petitioner, relying in part on *Demore v. Kim,* 538 U.S. 510, 529 (2003), maintains that his prolonged mandatory detention "without any individualized review poses serious constitutional problems." Doc. 10, at 15 & n.3. The undersigned agrees.

Courts "do not leave noncitizens who are detained during protracted withholding-only proceedings without a means to challenge the lawfulness of their detention." *G.P. v. Garland*, 2024 WL 328435, at *5 (D.N.H. Jan. 29, 2024). "Noncitizens who have been detained during lengthy withholding-only proceedings retain the right to challenge their detention on constitutional grounds even though their proceedings are ongoing." *Id.*

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause applies to all persons in the United States regardless

14

of citizenship status. *Zadvydas*, 533 U.S. at 693. Where, as here, a noncitizen brings an as-applied due process challenge to their prolonged detention, courts have applied the three-part *Mathews*[13] balancing test. *See Chavez-Gonsalez v. Ball*, 2024 WL 1268282, at \*4-7 (W.D.N.Y. Mar. 26, 2024); *Trejo v. Warden of ERO El Paso E. Montana*, 2025 WL 2992187, at \*7-10 (W.D. Tex. Oct. 24, 2025); *Caceres v. Joyce*, 2025 WL 3171865, at \*4-5 (S.D.N.Y. Nov. 13, 2025).

Under *Mathews*, a court considers: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

### a. Private interest.

Here, there is no question that Petitioner's private interest is strong. He is asserting "the most elemental of liberty interests—the interest in being free from physical detention by [the] government." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "'In our society liberty is the norm,' and detention ... 'is the carefully limited exception.'" *Id.* (quoting *United States v. Salerno*, 481 U.S.

---

[13]    *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

739, 755 (1987)); *see also Iza v. Arnott*, 2026 WL 67152, at \*3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))). Courts have been "'careful not to 'minimize the importance and fundamental nature' of the individual's right to liberty.'" *Hamdi*, 542 U.S. at 529-30 (quoting *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Id.* at 530 (quoting *Jones v. United States*, 463 U.S. 354, 361 (1983)).

Thus far, Petitioner has been detained for seven months, which is longer than the mandatory 90-day removal period laid out in § 1231, see *Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)), and longer than the presumptively reasonable period contemplated in *Zadvydas*, 533 U.S. at 701. He finds himself confined alongside criminal offenders, after having served his federal and state sentences. The first *Mathews* factor weighs in his favor.

### b. Erroneous deprivation.

The second *Mathews* factor is the risk of an erroneous deprivation of the petitioner's liberty interest by the procedures used for his current detention, as well as the probable value of additional safeguards. 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable.

"Once it is determined that due process applies, the question remains

16

what process is due." *Morrissey,* 408 U.S. at 481. Due process requires adequate procedural protections to weigh the governmental interest against that of the individual. *See Zadvydas*, 533 U.S. at 690. Due process is flexible and calls for such procedural protections as the particular situation demands. *Mathews*, 424 U.S. at 334. Immigrant detainees have a right to notice and opportunity to be heard appropriate to the nature of the case. *J. G. G.*, 604 U.S. at 673.

The risk of an erroneous deprivation of Petitioner's liberty interest is considerable here where he has received no bond determination by a neutral decisionmaker. Applicable DHS regulations "generally require a custody review at the end of the 90-day removal period, a second review by a panel at ICE headquarters after six months of detention, and subsequent annual reviews." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 583 (2022); 8 C.F.R. § 241.4. The noncitizen "may submit information in writing in support of his or her release" and "may be assisted by a person of his or her choice[.]" 8 C.F.R. § 241.4(h)(2). The regulations set forth criteria for release and factors to be weighed in considering detention or release. 8 C.F.R. § 241.4(e)-(f). Further, "[n]ot more than once every three months in the interim between annual reviews, the alien may submit a written request to the HQPDU for release consideration based on a proper showing of a material change in circumstances since the last annual review." 8 C.F.R. § 241.4(k)(2)(iii).

17

The Court agrees that "at the 180–day juncture, the DHS regulations are appropriate but not alone sufficient to address the serious constitutional concerns raised by continued detention" because the "regulations do not afford adequate procedural safeguards [as] they do not provide for an in-person hearing, they place the burden on the alien rather than the government and they do not provide for a decision by a neutral arbiter such as an immigration judge." *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011), *overruled on other grounds by Arteaga-Martinez*, 596 U.S. 573.[14] And when the 180-day review takes place, the alien has been detained for approximately six months and the review, if unfavorable to the alien, authorizes detention for another year. *See id.*; *see also Zadvydas*, 533 U.S. at 692 (holding that indefinite detention under § 1231(a)(6) raised serious constitutional concerns, in part because "the sole procedural protections available to the alien are found in administrative proceedings, where the alien bears the burden of proving he is not dangerous"). Finally, at the administrative review, even if he had representation, Petitioner faces the difficulty in proving a negative. *L.G. v. Choate*, 744 F. Supp. 3d 1172, 1183–84 (D. Colo. 2024) ("'[P]roving a negative (especially a lack of danger) can often be more difficult than proving a cause

---

[14]    *Artega-Martinez* did not determine the due process issue. 596 U.S. at 583 ("The courts below did not reach Arteaga-Martinez's constitutional claim.")

18

for concern.'" (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 31 (1st Cir. 2021)). By contrast, the government has substantial resources. The Court concludes that "the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial." *Diouf*, 634 F.3d at 1092. This factor tips in Petitioner's favor.[15]

### c.   The government's interest.

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. The Court recognizes the Government's strong interest in preventing noncitizens from remaining in the United States in violation of our law and that it retains an obvious interest in protecting the public from dangerous criminal noncitizens. But the Court can discern no significant administrative or fiscal burden associated with providing a bond hearing – any burden is relatively minimal, and there is nothing in the record before this Court establishing that providing Petitioner with a bond hearing would be fiscally or administratively burdensome. *See Arostegui-Maldonado v. Baltazar*, 794 F. Supp. 3d 926, 943 (D. Colo. 2025) ("[The administrative burden of a bond hearing is minimal.") (citation omitted).

---

[15]   The Court recognizes DHS regulations provide annual custody reviews and Petitioner may request a new custody review once every three months based on materially changed circumstances. 8 C.F.R. 241.4(k)(2)(iii).

Petitioner seeks his immediate release. Doc. 10, at 19. But the Court finds that the appropriate remedy is an individualized bond hearing before an IJ.[16]

## D.    INA and ICE regulations.

Petitioner also seeks relief under the INA and its corresponding regulations, 8 C.F.R. §§ 241.4, 241.13, governing the detention and release of noncitizens with administratively final orders of removal. Doc. 10, at 18. Petitioner maintains that Respondents have failed to comply with these provisions and that "[n]o independent alternative basis supports Respondents' decision continue detaining [him]." *Id.* Respondents, in turn, assert that "Petitioner cannot show which violations [of the INA] occurred and how he was harmed" and that "[s]uch conclusory allegations should be rejected by [the] Court." Doc. 11, at 10.

Sections 241.4 and 241.13 "set the terms of supervised release under Sections 1231(a)(3) and 1231(a)(6), including the conditions and procedures under which ICE may revoke release." *T. Nguyen v. Noem,* 2026 WL 790881, at *5 (C.D. Cal. Mar. 16, 2026).

Petitioner has not presented anything to the Court suggesting he was previously released by Respondents pursuant to either §§ 241.4 and 241.13.

---

[16]    Given that the undersigned recommends granting Petitioner's petition in part, the undersigned finds Petitioner's request for declaratory relief moot.

So, the Court cannot grant relief on this basis for failure to comply with the INA and its corresponding regulations regarding supervised release.

## V.  Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Petitioner's request for habeas relief, in part, and order:

- Respondents must provide Petitioner with an individualized bond hearing before a neutral IJ within five business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period;

- The Court order Respondents certify compliance by filing a status report within ten business days of the Court's order; and

- Counsel for Respondents provide a copy of the Court's order to Counsel for the Warden of the Cimarron Correctional Facility without delay.

The undersigned advises Petitioner of his right to file an objection to this report and recommendation with the Clerk of this Court on or before May 14, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2).[17] The undersigned further advises the parties that failure

---

[17]    Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas

to make a timely objection to this report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in this matter.

ENTERED this 11th day of May, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").